PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TERRY BELK; DWAYNE COLLINS, on
behalf of themselves and the class
they represent,
*Plaintiffs-Appellants,*

v.

WILLIAM CAPACCHIONE, Individually
and on behalf of Christina
Capacchione, a minor; MICHAEL P.
GRANT; RICHARD EASTERLING;
LAWRENCE GAUVREAU; KAREN
BENTLEY; CHARLES THOMPSON; SCOTT
C. WILLARD,
*Plaintiffs-Appellees,*

and

THE CHARLOTTE-MECKLENBURG
BOARD OF EDUCATION; ERIC SMITH,
Superintendent, in his official
capacity; ARTHUR GRIFFIN, Chairman
of the Charlotte-Mecklenburg
School Board, in his official
capacity,
*Defendants.*

UNITED STATES OF AMERICA; NORTH
CAROLINA SCHOOL BOARDS
ASSOCIATION; NATIONAL SCHOOL
BOARDS ASSOCIATION,
*Amici Curiae.*

No. 99-2389

WILLIAM CAPACCHIONE, Individually
and on behalf of Christina
Capacchione, a minor; MICHAEL P.
GRANT; RICHARD EASTERLING;
LAWRENCE GAUVREAU; KAREN
BENTLEY; CHARLES THOMPSON; SCOTT
C. WILLARD,
*Plaintiffs-Appellees,*

and

TERRY BELK; DWAYNE COLLINS, on
behalf of themselves and the class
they represent,
*Plaintiffs,*

v.

THE CHARLOTTE-MECKLENBURG
BOARD OF EDUCATION; ERIC SMITH,
Superintendent, in his official
capacity; ARTHUR GRIFFIN, Chairman
of the Charlotte-Mecklenburg
School Board, in his official
capacity,
*Defendants-Appellants.*

UNITED STATES OF AMERICA; NORTH
CAROLINA SCHOOL BOARDS
ASSOCIATION; NATIONAL SCHOOL
BOARDS ASSOCIATION,
*Amici Curiae.*

No. 99-2391

WILLIAM CAPACCHIONE, Individually
and on behalf of Christina
Capacchione, a minor; MICHAEL P.
GRANT; RICHARD EASTERLING;
LAWRENCE GAUVREAU; KAREN
BENTLEY; CHARLES THOMPSON; SCOTT
C. WILLARD,
                    *Plaintiffs-Appellees,*

                and

TERRY BELK; DWAYNE COLLINS, on
behalf of themselves and the class
they represent,
                              *Plaintiffs,*

                    v.                              No. 00-1098

THE CHARLOTTE-MECKLENBURG
BOARD OF EDUCATION; ERIC SMITH,
Superintendent, in his official
capacity; ARTHUR GRIFFIN, Chairman
of the Charlotte-Mecklenburg
School Board, in his official
capacity,
                    *Defendants-Appellants.*

UNITED STATES OF AMERICA; NORTH
CAROLINA SCHOOL BOARDS
ASSOCIATION; NATIONAL SCHOOL
BOARDS ASSOCIATION,
                    *Amicus Curiae.*

WILLIAM CAPACCHIONE, Individually
and on behalf of Christina
Capacchione, a minor; MICHAEL P.
GRANT; RICHARD EASTERLING;
LAWRENCE GAUVREAU; KAREN BENTLEY;
CHARLES THOMPSON; SCOTT C.
WILLARD,
                     *Plaintiffs-Appellees,*

            and

TERRY BELK; DWAYNE COLLINS, on
behalf of themselves and the class
they represent,
                            *Plaintiffs,*

                v.                                    No. 00-1432

THE CHARLOTTE-MECKLENBURG
BOARD OF EDUCATION; ERIC SMITH,
Superintendent, in his official
capacity; ARTHUR GRIFFIN, Chairman
of the Charlotte-Mecklenburg School
Board, in his official capacity,
                     *Defendants-Appellants.*

UNITED STATES OF AMERICA; NORTH
CAROLINA SCHOOL BOARDS
ASSOCIATION; NATIONAL SCHOOL
BOARDS ASSOCIATION,
                         *Amici Curiae.*

Filed: December 14, 2001

---

**ORDER**

The Grant-Intervenors-Appellees and the Capacchione-Intervenor-Appellee each filed a motion to reconsider the issue of attorneys' fees and a motion to stay the mandate pending resolution of the motion to

reconsider. The motion to reconsider is denied by a vote of 6-5 (Chief Judge Wilkinson and Judges Niemeyer, Michael, Motz, King, and Gregory in the majority). The motions to reconsider effectively stayed the mandate, but that stay is now lifted. Chief Judge Wilkinson filed an opinion concurring in the denial of rehearing. Judge Traxler filed an opinion dissenting from the denial of rehearing in which Judges Widener and Wilkins joined.

The motion of the Belk plaintiffs for a stay of the mandate is denied.

For the Court

Patricia S. Connor
Clerk

WILKINSON, Chief Judge, concurring in the denial of reconsideration:

The matter of attorneys' fees has been extensively debated in the en banc decision of the court and I have no desire to belabor it. In view of my good colleague's dissent, however, I shall briefly state the basis for my view that a departure from the American rule, whereby each side pays its own lawyers, is not warranted with respect to the unitary status determination.

Such a departure is not justified for the simple reason that Congress has not authorized it. The Supreme Court has made clear that Congress has not "extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 (1975). Under the American rule, "we follow a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Res.*, 121 S. Ct. 1835, 1839 (2001) (internal quotation omitted). There is no such authority here.

The dissent attempts to analogize the unitary status proceedings to an action under 42 U.S.C. § 1983, for which attorney's fees would be

available to prevailing parties at the discretion of the court under 42 U.S.C. § 1988. What we have here, however, is the exact opposite of a § 1983 action. The essence of a § 1983 action is that the defendant has violated the plaintiff's federal rights under color of state law. In contrast, the entire point of a unitary status determination is to prove that the school district is in compliance with federal law. And Congress has simply not authorized us to impose attorney's fees on a party whose actions have been adjudged compliant with federal statutes and our Constitution.

While the dissent would have us believe that the Grant and Capacchione plaintiffs simply picked up where the *Swann* plaintiffs left off, this is simply not the case. The focus of their respective efforts was quite different. The *Swann* plaintiffs sought to prove the school board in violation of the bedrock federal mandate that no student be denied an education on account of his or her race. The unitary status proceedings sought to determine, by contrast, that the rights of all school children under federal law had been vindicated and achieved.

It is important that the judicial system not blow hot and cold with respect to the litigants who come before it. For many decades the courts impressed upon the Charlotte-Mecklenburg school district the singular importance of desegregating its public schools and affording each and every child an equal educational opportunity without regard to race. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("[S]chool authorities are clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch.") (internal quotation omitted). Now that this goal of unitariness has been reached, it would be inconsistent in the extreme to punish the school board for doing the very thing the courts have all along insisted that it do.

My good dissenting brother urges us to view this matter as one of equity or policy. I readily agree that the Grant and Capacchione plaintiffs have performed a substantial public service in achieving the unitary status determination and in returning the school system to the control of local authorities. As a matter of equity, however, there is also something to be said for looking to the future, putting this litigation behind us, and spending public funds on the education of school

children rather than on opposing lawyers' bills. The dissent predicts that unitary status proceedings will become unaffordable in the absence of fee shifting, but it is quite possible that school boards in other locations will be moved to free themselves from court orders on their own without the need for private interveners to enter the suit. In all events, these are questions of pure policy and underscore the inadvisability of courts debating the pros and cons of fee shifting in the absence of a congressional declaration.

It is simply untenable to impose a large fee obligation upon a public school district for desegregating its schools. Congress has not sanctioned such a course of action. It would mark a cruel sequel to the *Brown* decision if, at the end of the day, federal courts were to punish the successful completion of the desegregation process with an unauthorized departure from the American rule.

TRAXLER, Circuit Judge, dissenting:

I respectfully dissent from this court's denial of Capacchione's and Grant's motions to reconsider their claims to attorneys' fees for the role they played as private attorneys general in achieving a declaration of unitary status. As a result of this declaration, CMS must have a race-neutral student assignment plan in place no later than the 2002-2003 school year unless its use of race is narrowly tailored to serve a compelling governmental interest. The plaintiff-intervenors have prevailed against CMS and have obtained a decree that alters the conduct of CMS toward all children attending public school in Mecklenburg County. Yet, this court vacates the district court's fee award on the ground that the plaintiff-intervenors have not prevailed.

School desegregation cases are unique in the manner in which they proceed. There are two basic steps in the court process to obtain unitary status. In the first part, the plaintiffs seek to impose federal court control over the school system and to have federal courts dictate procedures for the operation of the schools. When the court-ordered procedures have worked, the second part begins with the parties returning to district court to obtain a declaration of unitary status and the concomitant removal of federal court oversight.

This case began in 1965 when the original *Swann* plaintiffs brought a § 1983 action to convert CMS "into a unitary nonracial system

wherein educational opportunities offered by [the board] are made available to all students without regard to race or color." J.A. XXXIII-16,162. The *Swann* plaintiffs succeeded in having CMS placed under court order and participated in proceedings whereby the district court adopted a sweeping desegregation plan. In 1975, the case was removed from the active docket and the *Swann* plaintiffs were deservedly and properly awarded $204,072.33 in fees and costs for their service as private attorneys general in the first phase of the desegregation effort.

For the most part, this case remained inactive until 1997, when Capacchione challenged CMS's magnet schools program and, shortly thereafter, amended her complaint to seek a declaration of unitary status as well. *Swann* was reactivated and Capacchione intervened in that action. Grant then moved for a declaration of unitary status and also intervened in the *Swann* litigation. Thus began the second part of the process.

The *Swann* plaintiffs, however, did not want the second and final phase of the judicial process to occur, so they fought a finding of unitary status. Capacchione and Grant had to step in and prove to the district court that what the *Swann* plaintiffs originally sought in their lawsuit under § 1983 had, in fact, been achieved—that what had been started in the 1960s had finally been completed and the vestiges of segregation removed to the extent practicable. And like the *Swann* plaintiffs, who received a fee award for work done before the case was removed from the active docket, the plaintiff-intervenors now seek, and are entitled to, their attorneys' fees.

No member of the court doubts that the *Swann* plaintiffs would be entitled to fees under § 1988 had they been the ones to successfully move for a declaration of unitary status. Yet in spite of the same measure of success by the plaintiff-intervenors, we deny them their fees. By judicial fiat, plaintiff-intervenors in school desegregation cases have been written out of § 1988. Should another case like this arise where the original plaintiffs and the school board are content to let the desegregation order remain in place long after the dual system has been dismantled, parents demanding a return of local control will be helpless. As the present case demonstrates, a declaration of unitary status can be expensive ($1.49 million). I have no doubt that if our

decision had been on the books in 1997 neither Capacchione, nor Grant, nor virtually any other public school parent in Mecklenburg County could have afforded to seek a removal of the federal courts from control of the school system. I find it ironic that in affirming the district court's declaration of unitary status but denying the prevailing parties their fees, we simultaneously condemn other school districts in our circuit to prolonged and unnecessary federal court control.

Finally, while unfortunate that the school board should have to pay such a large award, this is a risk it took when it decided to fight the unitary status determination—not unlike the ill-fated decision it made in the 1960s to fight the desegregation effort to begin with, when we made it pay the fees of the original *Swann* plaintiffs. For attorneys' fees purposes, this court has decided that one party can get its fees under § 1988 for forcing the school board to abide by the law while the other cannot. Therefore, I respectfully dissent.

Judge Widener and Judge Wilkins have authorized me to indicate that they join in this dissent.